**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 2 4 2007

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

| | |
|---|---|
| THE UNITED STATES OF AMERICA, *ex rel.* NORMAN RILLE and NEAL ROBERTS, <br><br>              Plaintiff, <br><br>     vs. <br><br><br><br><br> AMERICAN MANAGEMENT, SYSTEMS, INCORPORATED, a Delaware Corporation; CACI INTERNATIONAL INC., a Delaware corporation; and ██████████ <br><br>              Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. 4-04 CV0000990GTE <br><br> ██████████████ <br> ████████████ <br> ████████ |

**SECOND AMENDED COMPLAINT FOR VIOLATIONS
OF FALSE CLAIMS ACT**

Plaintiff, United States of America, for claims against Defendants, complains and alleges as follows:

**<u>NATURE OF ACTION</u>**

1.      This is an action brought pursuant to the False Claims Act (31 U.S.C. § 3729, *et seq.*) through Norman Rille ("Rille") and Neal Roberts ("Roberts") as Relators ("Relator(s)"), pursuant to 31 U.S.C. § 3730(b) (the "FCA") for and on behalf of the United States of America. This action is brought against Defendants American Management, Systems, Incorporated, CACI International Inc., and ██████████, along with their various predecessors, successors,

(collectively "Defendants"), by and through themselves and/or their subsidiaries, and affiliates (directly or indirectly).

**United States Procurement of Products and Services from Defendants**

2.      Over the last 10 years, the United States Government, along with its departments and subdivisions ("the United States Government" or "Government"), is engaged in contracting for the development, manufacture and implementation of all kinds of programs and systems, including but not limited to substantial contracts to modernize and transform its operations. Among other things, the United States Government has and does contract with United States Government contractors, including, but not limited to, general contractors and consulting companies, which purport to be skilled in contract execution, developing, manufacturing, and/or converting and integrating government systems and/or providing information technical services ("Systems Integration Consultants"). Such contracts, development, manufacture and/or conversion and implementation requires the Government's procurement of substantial technology hardware, software and technical services from various technology companies ("Technology Vendors") resulting in the Government's expenditure of billions of dollars. Indeed, Government spending on information technology services and products alone constitutes as much as $150 billion annually, or 20 percent of combined commercial and Government information technology sales. Technology Vendors send tens of thousands of proposals to the Government yearly, seeking to capture some of these Government dollars. The Systems Integration Consultants, who are entrusted and retained to act as the Government's independent third party objective advisors, are to assist the Government in determining the most appropriate subcontractors, and hardware and software systems for many kinds of systems and programs,

2

including but not limited to the integration of computer systems and networks, all to meet the
Government's ever growing needs.

3.      Contracts have been entered into, directly or indirectly, between Defendants and
the United States Government pursuant to the federal Anti-Kickback provisions set forth at 41
U.S.C. §51 *et seq.*, and the Federal Acquisition Regulations ("FARs"), including, but not limited
to, FAR 3.502-3, 52.203-7, the federal Truth in Negotiations Act ("TINA") provisions set forth
at 10 U.S.C. § 2306 *et seq.*, the federal Stark Law set forth at 41 U.S.C. §1395mm *et seq.*, and
federal organizational conflict of interest laws, including, but not limited to FAR 9.5 *et seq.*
These laws and regulations, the False Claims Act, and the contracts themselves, all prohibit
Kickbacks, as defined below, and require Defendants to be truthful in negotiations, and to certify
that the cost or pricing data they proffer to the Government is current, accurate, and complete,
and to certify that no third party relationship has been entered into that creates a conflict of
interest with the Government.

## Defendants Have Established Alliances
## to Capture United States Government Dollars

4.      In order to increase market share in Government work, Defendants, who are
Government contractors, have established relationships, and routinely use those relationships, in
what have become known as "teams," "strategic alliances," "alliance teams," or "affiliates"
("Alliance(s)" or "Alliance Team(s)" or "Alliance Partnership(s)" or "Affiliate(s)"). Defendants
have established Alliances, Alliance Teams, Alliance Partnerships, and/or Affiliate relationships
for the purpose of consummating sales to the United States Government. Defendants cooperate
nearly exclusively with their Alliance Team members and/or Alliance Partners, and/or
subsidiaries, and/or Affiliates to this end.

3

**Defendants Have Entered into Conspiracies to Give and Receive Kickbacks
and Concealed Them, and/or Misrepresented Best Pricing**

5.    (a)  Plaintiff, the United States Government, alleges that over the last ten (10)

years and continuing up to the date of trial (the "Relevant Time Period"), Defendants have

exploited the trust the Government has reposed in them to act with honesty and candor, to

provide accurate best pricing information, and to act without conflicts of interest, and to serve as

independent third party objective advisors, and have destroyed their independence by using their

Alliance and/or Affiliate relationships to enrich themselves through a kickback scheme.  For

example, Defendants have entered into conspiracies between and among themselves wherein

they seek/receive and/or offer/pay such Kickbacks, as defined below, between and among

themselves in the nature of anything of value, including, but not limited to, referral fees,

influence(r) fees, systems integration compensation fees, reseller fees, commissions, free or

discounted products and/or services, equity ownership, profit sharing,  and/or profits to an entity

partially owned by the Defendants, or other benefits ("Kickbacks" or "Kickback Scheme").  Such

Kickbacks are given to Defendants for their referral or recommendation to the Government of

their Alliance Team members, Alliance Partners, and/or Affiliates, including, but not limited to,

other Alliance Systems Integration Consultants, Alliance Technology Vendors, and/or any other

Alliance and/or Affiliate contractors, in obtaining contracts or subcontracts with the United

States.

(b)  These conspiratorial agreements to seek/receive and/or offer/pay such

Kickbacks were and are a prerequisite to the inclusion of a Defendant in an Alliance Team or

Alliance Partner or Affiliate relationship. Also, in the furtherance of the Kickback Scheme and

conspiracy, many of Defendants created partially or wholly-owned resellers of, among other

4

things, Technology Vendor products and/or services ("Reseller(s)"), which such Defendants used to retain the Kickbacks, and/or used as conduits to funnel the Kickbacks to themselves. The Defendants have agreed that their Kickback Scheme was and is to be kept confidential. As a result, hundreds of millions of dollars of Kickbacks were sought, received, offered and paid between and among the Defendants with their Alliance Team Members and/or the Alliance Partners, and/or subsidiaries, and/or Affiliates in violation of the False Claims Act and other federal statutes and regulations. In furtherance of this Kickback Scheme and conspiracy, Defendants, and each of them, expressly or impliedly represented or certified to the Government that they complied with various Anti-Kickback statutes, FARs, TINA, the Stark laws, and organizational conflict of interest laws, when, in fact, they had not, and do not, comply with such laws and regulations. Again, this resulted in the making of false claims in breach of the FCA to the Government in connection with Defendants' Government contracts.

6.    In addition, as part of the schemes to defraud the Government and concealment, Defendants failed to provide to GSA and other government agencies current, accurate, and complete disclosure of their best pricing (after all discounts, rebates, and other benefits) for any entities, whether such entity sells to the Government or not, all in violation of TINA and other laws and regulations, thereby causing defective GSA and other government pricing schedules. This resulted in FCA violations, as to both direct sales to the Government by a Defendant, and indirect sales through an SI, Alliance, or Technology Vendor, with or without a Kickback.

## PARTIES, JURISDICTION AND VENUE

5

7.    American Management Systems, Incorporated is a Delaware corporation doing business in the State of Arkansas, and more particularly within the geographical limits of the United States District Court, Central District, State of Arkansas.  During the Relevant Time Period, American Management Systems, Incorporation, its predecessors, and successors (directly or through subsidiaries, affiliates or assigns), have established Alliances, Alliance Teams, Alliance Partnerships, and/or Affiliate relationships for the purpose of consummating sales to the United States Government in various capacities, including but not limited to, as Systems Integration Consultants for the United States Government, and/or Technology Vendors for the United States Government.

8.    CACI International, Inc., is a Delaware corporation doing business in the State of Arkansas, and more particularly within the geographical limits of the United States District Court, Central District, State of Arkansas. During the Relevant Time Period, CACI International, Inc., its predecessors, including American Management Systems Incorporated, and successors (directly or through subsidiaries, affiliates or assigns), have established Alliances, Alliance Teams, Alliance Partnerships, and/or Affiliate relationships for the purpose of consummating sales to the United States Government in various capacities, including but not limited to, as Systems Integration Consultants for the United States Government, and/or Technology Vendors for the United States Government.  Defendants American Management Systems Incorporation, and CACI International, Inc., and their  predecessors, and successors (subsidiaries, affiliates or assigns) shall be referred to hereafter collectively as "CACI."

9.    ███████████████████████████████

6

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

10.    Jurisdiction of this Court is founded upon 28 U.S.C. § 1331, 28 U.S.C. § 1345, 31 U.S.C. § 3729 and 31 U.S.C. § 3732(a) inasmuch as the United States of America is a party hereto and the claims set forth herein are founded upon a law of the United States of America.

11.    Venue lies in this District pursuant to 28 U.S.C. § 1391(b), 31 U.S.C. § 3729 and 31 U.S.C. § 3732(a) inasmuch as one or more of the Defendants (directly or indirectly) can be found, resides and/or transacts business within this district of the State of Arkansas; and more specifically, Defendants (directly or indirectly) transact business within this district of the State of Arkansas, and in addition, [REDACTED] was and is an Alliance Partner(s) or an Alliance Teammate(s) and co-conspirator(s) with Defendant CACI in some of the acts alleged herein, which were and caused the making of false claims under the FCA, and also by virtue of violations of the Anti-Kickback statutes, FARs, TINA, the Stark laws, and organizational conflict of interest laws, and/or that said conspiracy between Defendants (directly or indirectly) was entered into within this district of the State of Arkansas and/or acts pursuant to the

7

conspiracy occurred from within this district of the State of Arkansas, and/or false

records/statements/certifications/claims were made or caused to be made from within this district

of the State of Arkansas, and/or Defendants (directly or indirectly) performed or are to perform

contract work with the Government within this district, and/or were paid from the Government

or to the Defendants (directly or indirectly) within this district of the State of Arkansas.

12.     Relators have previously made a voluntary disclosure of the wrongdoing referred

to herein to the United States Government pursuant to U.S.C. § 3730(e)(4)(B).

## FACTUAL BACKGROUND

### Defendants' Kickback Scheme

13.     Plaintiff alleges that during the Relevant Time Period, Defendants established

Alliances, Alliance Teams, Alliance Partnerships, and/or Affiliate relationships, and some of

Defendants established business to business trading exchange(s) linking Government

contractors, all for the purpose of consummating sales to the United States Government with,

among others, many of the major Government contractors, and most of the following major

sellers of hardware and software technology in the United States such as ███████████

████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████

██████████████████████████████████

████████████████████████████

██████████████████████████

██████████ and their affiliates, predecessors, successors in interest, and subsidiaries. Also,

Defendants, and/or their Alliance Team members, and/or subsidiaries, and/or Affiliates, entered

into contracts with the United States Government, under the terms of which, and/or by virtue of

law or regulation requiring  them to comply with the False Claims Act, Anti-Kickback statutes,

FARs, TINA, the Stark laws, and organizational conflict of interest laws.

14.     During the Relevant Time Period, Defendants, and each of them, in violation of

their contracts with the United States Government, established Alliance relationships, and/or

Affiliate relationships wherein Kickbacks were sought, received, offered and/or paid between

and among them for referring, recommending, and/or assisting their Alliance Team members,

and/or Alliance Partners, and/or subsidiaries, and/or Affiliates in obtaining contracts and/or

subcontracts with the United States Government.

15.     Defendants had and have actual knowledge that their representations,

negotiations, statements, records, claims, invoices for payment and certification of compliance

(express or implied) with the Anti-Kickback statutes, FARs, TINA, the Stark laws, and

organizational conflict of interest laws, were false, and/or acted in reckless disregard for their

truth, or acted with deliberate ignorance of their falsity.

16.     Defendants, directly or indirectly, submitted false claims for payment to the

United States Government and expressly or impliedly made statements, records and certifications of compliance in support of such claims, and in violation of the FCA, and also in violation of the Anti-Kickback statutes, FARs, TINA, the Stark laws, and organizational conflict of interest laws.

## RELATOR RILLE'S DIRECT AND INDEPENDENT KNOWLEDGE

17.    Based on the following experiences, communications and documents seen during his employment at ▇ and Accenture, Relator Rille learned that the Alliance Technology Vendors' relationship with Systems Integration Consultants meant that, as a policy and practice, Kickbacks were sought, received, offered and/or paid between the Systems Integration Consultants and their Alliance Technology Vendors. He further learned that Alliance relationships meant that as a policy and practice, Kickbacks were sought, received, offered and/or paid between United States Government contractors by and between their Alliance Team Members and/or Alliance Partners. These Kickbacks included "referral fees," "influence(r) fees," "systems integration compensation fees," "reseller fees," commissions, free or discounted products and/or services, equity ownership, profit sharing, payment of all or a portion of an employee's salary and/or benefits, rebates, training, joint marketing budgets, payment of or credit for all or a portion of any of expenses, and any other things or services of value. For example, these Kickbacks were and are being paid to Accenture for referring, or recommending, and/or for assisting Alliances, and/or subsidiaries, and/or Affiliates in obtaining contracts or subcontracts with the United States. Furthermore, Relator Rille learned that ▇ and SeeBeyond had and have a policy and practice of giving Kickbacks to their Alliance Team members, and/or Alliance Partners, and/or subsidiaries, and/or Affiliates.

10

18.     Also, Relator Rille learned during his employment with ▮▮▮ and Accenture that such monies or other things of value, including but not limited to, equity ownership, fees, and the receipt and payment of such fees, which were the subject of the Kickback Practice, were always to be kept confidential, and never to be disclosed to customers. This means that, for example, Defendants also failed to provide to GSA and other government agencies current, accurate, and complete disclosure of their best pricing (after all discounts, rebates, and other benefits) for any entities, whether such entity sells to the Government or not, all in violation of TINA and other laws and regulations, thereby causing defective GSA and other government pricing schedules. Likewise, Relator Rille learned during his employment with ▮▮▮ and Accenture that the Alliance and/or Affiliate relationships of Accenture (which implemented the Kickback Practice) included most of the major sellers of hardware and software in the United States along with

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ and their affiliates, predecessors, and successors in interest. Based on the documents received and the statements made to Relator Rille, he has concluded that Alliance/Affiliate relationships meant that most of the United States Government contractors, including, but not limited to, all the major Systems Integration Consultants and Technology Vendors, were and are engaged in the same Kickback Scheme and associated conspiracies.

19.     In approximately 1991, Norman Rille started working as a Director of Product Support for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Over the

11

following years he progressed to the position of Senior Product Manager.  In approximately

1996, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇ including Relator Rille, that ▇▇▇ was going to change their marketing strategy to

aggressively "go to market through Alliance Partners," who were Systems Integration

Consultants, and that they were going to create Alliance relationships with all the major Systems

Integration Consultants. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Relator Rille's superior,

also repeated those same messages in various group ▇▇ meetings that Relator Norman Rille

attended.  As Relator Rille was about to leave ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ told Relator Rille that because ▇▇ was

establishing Alliances with all of the major Systems Integration Consultants, including

Accenture, Relator Rille's knowledge of the ▇▇▇ products would put him in good stead not

only with ▇▇▇▇▇▇▇ but also with all the other large Systems Integration Consultants.

When Relator Rille left ▇▇ in 1998, he did not understand at that time that an Alliance

relationship would include the payment of "referral fees," "influencer fees," "SI Comp fees," or

"reseller fees."  Such an understanding would later follow.

      20.     After employment at ▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇ Relator Rille began employment in late 2000 at Andersen Consulting

LLP, which soon thereafter became Accenture, as a Senior Manager in the Information Delivery

Architecture group, with special focus on data warehousing and business intelligence

technologies.  While working for Accenture, Relator Rille was advised that it was Accenture's

policy and practice to seek and obtain "referral fees," "influencer fees," "SI Comp fees," or

"reseller fees" in the form of monies, commissions, free or discounted products or other things or

services of value for referring, recommending or assisting Accenture's Alliance Technology

Vendors in obtaining contracts or subcontracts with the United States. He learned this when he

asked the Alliance Services Manager, Mark Barry, the following: "Mark, can you tell me why

these phone contacts are required? Who is it helping?" Mark Barry replied that, among other

things, it was to improve the "job economics" for Accenture, thereby affirming the Kickback

Scheme. See a copy of Mark Barry's e-mail confirming this which is attached as Exhibit "A."

21.     While working for Accenture, Relator Rille was involved in a job with A.G.

Edwards, wherein he learned more about the extent of Accenture's Alliance relationships. He

was told by Mark Barry, Alliance Services Manager, and Jeff Gans, Manager of Engagement

Economics for Accenture on the A.G. Edwards job, that Accenture's Alliance relationships

included virtually all of the major sellers of hardware and software in the United States.

22.     While still at Accenture, Relator Rille received copies of documents, which

confirm that Accenture had established Alliance and/or Affiliate relationships with many of the

hardware and software vendors. Relevant portions of some of the Accenture documentation and

Technology Vendor documentation on this subject are attached as Exhibits "B"and "C." They

list as Accenture Alliance/Affiliate partners among others: ███████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████

23.     ████████████████████████████████

███████████████████████████████████████████



24.

█████  ████████████████████████████████████████████████

████████████████████████████████████████████████

█████  ██████████████████████

██████████████████████

████████████████████████  ████████████████████████████████

██████████████████████████  ████████████████

25.   ████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████

26.     Kevin Messer, Accenture's Senior Manager in Government Services, the division that focuses on contracts with the Government, asked Relator Rille to draft a presentation, describing ██████████████████ and its application in the business intelligence field for Government projects. ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████████████████  ████████████████████████

15



■   On approximately March 27, 2001, while still employed at Accenture,

Relator Rille received a document from ████ ████████████████████ █████████████

████████ ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

█████████████████████

28.     Additionally, while at Accenture, Relator Rille received a document from

SeeBeyond, which was owned in part by Accenture, describing Accenture's Alliance/Affiliate

relationship with SeeBeyond.  This SeeBeyond document, which is attached in part as Exhibit

"I," confirms that Accenture seeks and receives, and SeeBeyond, pays, "referral fees," "reseller

fees," provides discounted or free training, software and installation to its Alliance

Partners/Affiliates.  This document also specifies the terms of the  Kickback Scheme with

Accenture as follows:

".  .  .   **Our Business Relationship**

■ **Equity Position – 3%**

■ **SeeBeyond Board Seat – Jack Wilson, Accenture Partner**

16

- **Strategic eAl Alliance**

- **Incentive Program**

  - Up to 15% paid to engagement ream where SeeBeyond is part of the

  solution

- **Global Marketing Agreement**

  - Referral Agreement – 10%

  - Reseller Agreement – 20%

  - Discounted Training FY '01 for e*Gate; Free for e*Xchange

  - Accenture Trained 300 in 2000. Plan for 2001 is 600.

- **Solution Center Enablement**

  - Free software and installation . . ."

This SeeBeyond document also identifies other companies likely involved in the Kickback

Scheme and associated conspiracies including, but not limited to, ███████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████

    29.    Relator Rille learned that Accenture and its Alliances/Affiliates have been

including their  Alliances/Affiliates in contracts with the United States Government through

various communications and documents he received while at Accenture. In addition to that

already stated and cited above, for example:

- Exhibit "C," includes Accenture "Data Warehouse Practice" presentation pages 1-
  2 and Accenture "Security point of View" slide presentation, slides 1, 6 and 49,

which both describe the Alliance relationships between Accenture, SAS, Cisco, Sun Microsystems, HP, Oracle and others, and work to be performed by Accenture, its Alliances, and/or subsidiaries, and/or Affiliates for the United States Government, among other work.

- Exhibit "I," numbered page 8 identifies the federal Defense Logistics Agency ("DLA") and federal State Department as joint clients of Accenture and SeeBeyond.

- Exhibit "J," entitled "Response for: United States Transportation Command (USTRANSCOM)" dated July 18, 2001, page 5, represents that Accenture has "15 subcontractors and 3 Alliance partners integrated into a cross-functional team" for this Government project.



- Exhibit "K" is an Accenture document summarizing the involvement of Accenture and its Alliances Team on the business systems modernization engagement for the federal Government's Defense Logistics Agency. Among others, the document identifies Alliance companies as follows: "SAP, Manugistics, and Unisys." Additionally, Exhibit "J" describes the subcontractors and Technology Vendors as part of Accenture's "cross-functional team."

- Exhibit "L," attached and entitled "Oracle S/W Pricing for GTN21" is an Accenture internal worksheet prepared in support of Accenture's proposal for work on the federal project entitled Global Transportation Network for the 21st Century. Significantly, it shows a deeper discount from Oracle to Accenture than to the federal Government on this federal contract.

- Exhibit "M," attached and entitled "Resume Michael E VanVooren" is a description of Accenture's Teamwork with Exostar-a joint venture between The Boeing Company, Lockheed Martin Corporation, Raytheon Corporation, and

others.  It describes this joint venture as a "business to business trading exchange linking buyers with suppliers within the Aerospace and Defense industry."  It also indicates that Accenture is a Teammate coordinating the Accenture-Exostar Team and that they also "worked with other team members to support the on-ramps of the four founding company partners..." Relator Rille understood that the term "on-ramp" is a term of art for Alliances in the Government contractor industry.

## RELATOR ROBERT'S DIRECT AND INDIRECT KNOWLEDGE

## OF THE KICKBACK SCHEME

30.     Relator Roberts, a prior partner with Deloitte,  has investigated Alliance/Affiliate relationships, including, but not limited to, the conduct of Systems Integration Consultants and Technology Vendors in Alliance/Affiliate relationships.  As part of his investigation, he has spoken to various retired and current partners of Government contractors, also including partners with his prior firms.  In the process, he learned that the Alliance/Affiliate relationships between Government contractors meant that it is a practice to seek and receive, and/or pay, Kickbacks to the Alliance partners, and/or subsidiaries, and/or Affiliates as part of the Kickback Scheme and conspiracy alleged herein.

31.     He learned that these Kickbacks were "referral fees," "influencer fees," "SI Comp fees," or "reseller fees" in the form of monies, commissions, free or discounted products or other things or services of value that were and are being paid to Government contractors for referring, or recommending, and/or assisting their Alliance Team Members and/or Alliance Partners in obtaining contracts and/or subcontracts with the United States Government. Attached as Exhibit "N" is a list of some of the Government contractors that engaged in the Kickback Scheme.

32.    Relator Roberts further learned that it was the policy and practice of Government contractors in Alliance/Affiliate relationships not to disclose the Kickbacks by and between their Alliance Team Members and/or Alliance Partners, and/or subsidiaries, and/or Affiliates to their customers.

## SUMMARY OF FALSE CLAIMS ACT VIOLATIONS

33.    During the Relevant Time Period and as described herein above, Defendants along with their various predecessors, successors, by and through themselves, and/or their subsidiaries, and affiliates (directly or indirectly), including, but not limited to, those identified in Exhibit "O" attached hereto and incorporated herein, engaged in and continue to engage in the following systemic wrongful conduct in violation of the FCA:

a.    Presenting, or causing to be presented, false claims for payment to the United States Government for Government contract work, which involved referring, recommending, and/or the assisting of any Alliance Partner and/or Alliance Team Member and/or Affiliate, of CACI, and/or ████, and/or any Government contractor, in obtaining contracts and/or subcontracts with the United States Government, and any of the Alliances/Affiliates of the foregoing and/or seeking/receiving and/or offering/paying Kickbacks pursuant to the conspiracies and Kickback Scheme as alleged herein.

b.    Making, using, or causing to be made, or causing to be used, false records and/or statements to the United States Government to obtain United States Government contracts, and/or for support of claims for payment, and/or indicating that CACI, and/or ████, and/or either of their Alliances/Affiliates had not sought nor received, nor offered nor paid any kickbacks for referring, recommending, and/or assisting each other or other entities  in obtaining

contracts and/or subcontracts with the United States Government. Making, using, or causing to be made, or causing to be used, false records and/or statements to the United States Government to obtain United States Government contracts, and/or for support of claims for payment, and/or indicating that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Oracle, and/or Boeing, and/or Lockheed, and/or Raytheon, and/or Cisco and/or Exostar in obtaining contracts and/or subcontracts with the United States Government. This also involved Exostar making, using, or causing to be made, or causing to be used, false records and/or statements to facilitate retaining/passing money or other things of value to Defendants Boeing, Lockheed, and Raytheon, as its joint venture owners, to Alliances, and Affiliates, and/or funneling Kickbacks for other Government contractors, including but not limited to, income/profits/discounts/commissions/savings. As part of the schemes to defraud the Government, Defendants have also been failing to provide to GSA and other government agencies current, accurate, and complete disclosure of their best pricing (after all discounts, rebates, and other benefits) for any entities, whether such entity sells to the Government or not, all in violation of TINA and other laws and regulations, thereby causing defective GSA and other government pricing schedules. This resulted in FCA violations, as to both direct sales to the Government by a Defendant, and indirect sales through an SI, Alliance, or Technology Vendor, with or without a Kickback.

      c.     Presenting, certifying (expressly or impliedly) claims for payment and/or making, using, or causing to be made or used, false records and/or statements to the Government supporting claims for payment to the United States Government under United States Government contracts/subcontracts provided in a manner that violates the Federal Anti-Kickback

21

provisions set forth at 41 U.S.C. §51 *et seq*., and the FARs, including, but not limited to, FAR 3.502-3, 52.203-7, the provisions of TINA set forth at 10 U.S.C. § 2306 *et seq*., the Federal Stark Law set forth at 41 U.S.C. §1395mm *et seq*., and organizational conflict of interest laws, including, but not limited to FAR 9.5 *et seq*.

     d.     Defendants CACI and/or ███, and their predecessors, successors, Affiliates, and subsidiaries entering into a conspiracy to defraud the Government by getting contracts/subcontracts awarded to them and/or any other Alliance Team member, and/or Alliance Partner, and/or Affiliate, and/or any other Government contractors, and/or to get false or fraudulent claims allowed or paid, all in a manner that violates 31 U.S.C. §3729(a)(3) and Federal Anti-Kickback provisions set forth at 41 U.S.C. §51 *et seq*., and the FARs, including, but not limited to, FAR 3.502-3, 52.203-7, the provisions of TINA set forth at 10 U.S.C. § 2306.

     34.     It is alleged that the foregoing practices have resulted in the United States Government, either directly or indirectly through its agencies or intermediaries, entering into contracts/subcontracts under false representations and violations of law as alleged herein, purchasing the wrong products, including but not limited to, Alliance and/or Affiliate products, and/or technical services, and/or paying out monies or excess monies to Defendants, to which Defendants are not entitled, all in violation of the FCA.

     35.     It is further alleged that the United States Government, either directly or indirectly through its agencies or intermediaries, would not have contracted with Defendants had it known that the contracts/subcontracts, products and/or services for which the contracts were proposed were subject to a scheme to violate the violates the Federal Anti-Kickback provisions set forth at 41 U.S.C. §51 *et seq*., and the FARs, including, but not limited to, FAR 3.502-3,

52.203-7, the provisions of TINA set forth at 10 U.S.C. § 2306 *et seq.*, the Federal Stark Law set forth at 41 U.S.C. §1395mm *et seq.*, and organizational conflict of interest laws, including, but not limited to FAR 9.5 *et seq.*

36.     It is further alleged that the United States Government, either directly or indirectly through its agencies or intermediaries, would not have honored Defendants' claims for payment, had it known that the contracts/subcontracts, products and/or services for which the claims were made, were provided in a manner that violates the Federal Anti-Kickback provisions set forth at 41 U.S.C. §51 *et seq.*, and the FARs, including, but not limited to, FAR 3.502-3, 52.203-7, the Federal TINA provisions set forth at 10 U.S.C. § 2306 *et seq.*, the Federal Stark Law set forth at 41 U.S.C. §1395mm *et seq.*, and organizational conflict of interest laws, including, but not limited to FAR 9.5 *et seq.*

37.     All of the allegations contained in this Complaint as to Defendant        liability only, shall be limited to include        violations of the various Anti-Kickback statutes, FARs, and TINA only as to Kickbacks between        and CACI, its affiliates, predecessors, including but not limited to AMS, successors in interest, and subsidiaries. The allegations as to CACI are not so limited. Instead, CACI is allegedly liable as to Kickbacks involving        , any other Government contractor, including but not limited to Systems Integration Consultants, and/or any other Technology Vendors.

## COUNT ONE

## SUBSTANTIVE VIOLATIONS OF THE FALSE CLAIMS ACT

38.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 37 above, as if fully set forth herein.

39. Accordingly, Defendants have violated the provisions of the False Claims Act, 31 U.S.C. § 3729(a) by:

      a.    Knowingly presenting or causing to be presented to the United States Government, directly or indirectly, false or fraudulent claims to be paid or approved, directly or indirectly, by the United States Government (31 U.S.C. § 3729(a)(1));

      b.    Knowingly making, using, or causing to be made or used, or presenting false records or statements and/or false certifications to obtain contracts/subcontracts and/or the payment of false or fraudulent claims to be paid or approved by the United States Government (31 U.S.C. § 3729(a)(2));

40. The United States Government, upon presentation of such claims for payment, whether directly or indirectly, remitted payment despite the false nature of such claims.

41. Pursuant to 31 U.S.C. § 3729(a), Defendants are liable to the United States Government for a civil penalty of not less than $5,500, and not more than $11,000 for each violation of the FCA committed by Defendants.

42. The United States Government has further sustained damages, and will yet sustain damages up to the date of trial in an amount yet to be determined. Pursuant to 31 U.S.C. § 3729(a) Defendants are liable for three times the amount of all such damages sustained by the United States Government.

## COUNT TWO

## FALSE CLAIMS ACT CONSPIRACY

43.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 42 above, as if fully set forth herein.

44.     Pursuant to 31 U.S.C. § 3729(a)(3) through the acts described above and otherwise, Defendants entered into a conspiracy or conspiracies among themselves and with others to defraud the United States to obtain the above-alleged contracts and/or subcontracts and to get false and fraudulent claims allowed or paid.  Defendants have also conspired to omit disclosing or to actively conceal the Kickback Scheme, and the business to business exchange with associated Kickbacks, which, if known, would have reduced Government obligations to them or resulted in repayments from them to Government programs.  Defendants have taken substantial steps in furtherance of those conspiracies, by, among other things, preparing false records, by submitting such records to the Government for payment or approval, and by directing their agents, consultants, and personnel not to disclose and/or to conceal Defendants' fraudulent practices.

45.     The United States Government, through its intermediaries, is unaware of Defendants' conspiracies or the falsity of the records, statements and claims made by Defendants, and their agents, employees and co-conspirators, and as a result thereof, have paid and continue to pay millions of dollars to Defendants that they would not otherwise have paid.

46.     By reason of Defendants' conspiracies and the acts taken in furtherance thereof, the United States Government, and its intermediaries, have been damaged in the amount of many millions of dollars.

## PRAYER

WHEREFORE, Plaintiff, United States Government, prays for judgment against

25

Defendants for:

47. A judgment against all Defendants for all losses and damages that have been, or will be, sustained by the United States Government during the Relevant Time Period as a result of their violations of the FCA, as alleged herein, and triple the amount of such damages and for forfeiture of all revenues paid by the United States Government to Defendants under the contracts acquired in violation of the FCA pursuant to 31 U.S.C. § 3729; and civil penalties of not less than $5,500, nor more than $11,000, for each and every such violation;

48. Declaratory judgment that the herein-described false claims, false records and statements and conspiracy by and among the Defendants are in violation of the FCA;

49. An injunction against all Defendants that they not engage in further false claims, use of false records and statements and conspiracy with respect to consulting and software/hardware services/products as described herein;

50. Reasonable attorney's fees;

51. Costs incurred in the prosecution hereof; and

52. Such other relief as the Court deems just and equitable.

 Attorneys for Relators/Plaintiff

WILSON, ENGSTROM, CORUM & COULTER
200 South Commerce, Suite 600
Post Office Box 71
Little Rock, AR 72203
Telephone: (501) 375-6453
Facsimile: (501) 375-5914

Dated: _April 29, 2007_          By: _____
                                      Stephen Engstrom

Von G. Packard (CA74877)          Craig H. Johnson (CA90539)

26

Ronald D. Packard (CA 72173)
PACKARD, PACKARD & JOHNSON
Four Main Street, Suite 200
Los Altos, California 94022
Telephone:  (650) 947-7300
Facsimile:  (650) 947-7301

PACKARD, PACKARD & JOHNSON
2825 E. Cottonwood Pkwy., Suite 500
Salt Lake City, Utah 84121
Telephone:  (801) 428-9000
Facsimile:  (801) 428-9090

# United States District Court Eastern District of Arkansas

# *Exhibits are Attached to the Original Document in Court's Case File*